## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 2071 | DATE | 10/7/2002 |
| CASE TITLE | T.D. vs. LAGRANGE SCHOOL DISTRICT NO. 102 | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Plaintiff's are awarded fees the amount of 80 percent of ($137,679.75 less a deduction, if any, for administrative tasks) and costs in the amount of $6,991.73.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |
| DW | courtroom deputy's initials | |

Document Number: 58

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TD,

    Plaintiff,

v.

LA GRANGE SCHOOL DISTRICT NO. 102,

    Defendant.

No. 98 C 2071
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The parents of TD ("Parents") and La Grange School District ("La Grange") have reached a settlement agreement on the merits of their dispute regarding the evaluation, identification and provision of services for TD, an emotionally disturbed child, as well as reimbursement for his placement in a private school by Parents. After TD was expelled from kindergarten, Parents sought a Board of Education impartial hearing seeking evaluation, identification and services as well as reimbursement for his placement by them in a private school. Certain issues were decided in favor of Parents. La Grange was ordered to conduct an evaluation and hold an MDC and, as a result, TD was identified as emotionally/behaviorally disordered and found eligible for services from La Grange. The hearing officer also awarded Parents the cost of the one-on-one aide and transportation.

The hearing officer ruled in favor of La Grange by finding that the private school in which Parents had placed TD was inappropriate to meet TD's needs in the least restrictive environment and that Parents had placed TD at such private school unilaterally. The hearing officer denied reimbursement for the private school tuition and ordered the transfer of TD to a regular mainstream classroom with a one-on-one aide.

Parents appealed to me the decision of the hearing officer, seeking a reversal of the proposed placement in a regular classroom and the decision on reimbursement of the private school tuition. The parties filed cross-motions for summary judgment but, before I ruled on them, Parents requested, and I

granted in part, the opportunity to have a limited number of witnesses testify on a limited number of issues. Prior to the taking of additional evidence, the parties agreed to settle the appeal, so as to avoid further delay to TD's placement and receipt of appropriate services. The settlement was a true compromise, resulting in the placement of TD in a self-contained behavior disorded classroom in a public school. After a settlement conference in my chambers, Parents and La Grange agreed that La Grange would reimburse Parents for the amount it would have cost to educate TD within the La Grange School District during the pendency of the litigation.

On my recommendation, Parents and La Grange have provided me with letter briefs on the one remaining issue, that of whether TD's parents are entitled to an award in this matter of attorneys' fees[1] pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA").[2] The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. §1415(i)(3)(B). Primarily at issue is whether TD's parents are to be considered "prevailing parties" as defined by the IDEA. As a secondary matter, there is a dispute between the parties about whether the cost of TD's parents' expert witness fees is recoverable.

La Grange argues that the Supreme Court's decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), controls the issue of an award of attorneys' fees, and, accordingly that TD's parents are not entitled to recover such fees because they reached a settlement with La Grange and such a settlement does not "entail[] the judicial

---

[1] The term "attorneys' fees" shall refer to attorneys' fees and related litigation costs unless otherwise noted.

[2] La Grange contends that Parents' request for attorneys' fees is untimely because of the time that elapsed between the execution of the settlement agreement in September 2000 and the filing of Parents' letter brief in January 2002. By La Grange's own admission, however, "the parities consistently exchanged correspondence between November 2000 and January 2002." I fail to understand why La Grange believes that Parents ought to have submitted their request to me sooner if the parties were in active settlement discussions.

2

approval and oversight involved in a consent decree." *Id.* at 604 n.7. I do not reach the question of whether the unusual circumstances of this settlement rise to the level of a consent decree because I read *Buckhannan* as inapplicable to the issue at hand.

The Court in *Buckannon*, in evaluating a plaintiff's entitlement to attorneys' fees under the Americans with Disabilities Act (the "ADA") and the Fair Housing Amendments Act (the "FHAA"), held that parties were granted "prevailing party" status only when they receive favorable judgments on the merits or enter into settlement agreement enforced by a consent decree. *Id.* at 610. In discussing its inclusion of consent decrees, the Court noted that "[a]lthough a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant," *id.* at 604 (quoting *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), and contrasted consent decrees with private settlements, which "do not entail the judicial approval and oversight involved in consent decrees." *Id.* at n.7.

While the Court's holding in *Buckhannon* is limited to an interpretation of "prevailing party" in the ADA and the FHAA, the statutes at issue in that case, in dicta the Court speaks sweepingly and generally of "fee-shifting statutes." *Id.* at 603 (calling the term "prevailing party" a "legal term of art"). Indeed, it may be appropriate, in the absence of any evidence to the contrary, to interpret consistently the fee-shifting provisions of the ADA and FHAA and certain other civil rights statutes because it is apparent from the text that they were modeled after Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §2000a-3(b) and §2000e5(k). *See id.* at 624, n.1 (Ginsburg, J., dissenting) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, n.4.

The Seventh Circuit has yet to weigh in with an interpretation of whether or how *Buckhannon* bears on the issue of determining prevailing party status pursuant to the IDEA but, La Grange is in good company in making the argument that *Buckhannon* controls here. At least two judges in three opinions in

3

this district would agree with La Grange. *See Luis R. v. Joliet Township High Sch., Dist. 204*, 2002 WL 54544 (N.D. Ill) (finding, on reconsideration of 2001 WL 1000734, mediation agreement of the parties read into the record before the hearing officer is not a consent decree and, accordingly, plaintiffs are not "prevailing parties") (Conlon, J.); *Brandon K. v. New Lenox Sch. District*, 2001 WL 1491449 (N.D. Ill.) (finding that party to a mediation agreement is not a "prevailing party" and agreeing with other courts that *Buckhannon* does not apply to the IDEA) (Coar, J.); *Luis R. v. Joliet Township High Sch., District 204*, 2001 WL 1000734 (N.D. Ill) (rejecting argument that *Buckhannon* does not apply to the IDEA and noting that the Supreme Court refers to fee-shifting statues in general) (Conlon, J.).

But while the Seventh Circuit has not interpreted the term "prevailing party" in the context of attorneys' fees pursuant to the IDEA, it has recognized that the interpretation of such term will turn on the text, structure or legislative history of the statute at issue. *See Crabill v. Trans Union L.L.C.*, 259 F.3d 662, 667 (2001) (finding sufficient similarity between the attorneys' fees provisions of the Consumer Credit Protection Act and the provisions at issue in *Buckhannon*). And, with respect to my District Court colleagues who have applied the holding in *Buckhannon* to the IDEA, I note that they did so without a comparison of the text, structure or legislative history of the attorneys' fees provisions of the IDEA to the Civil Rights Act or the ADA and FHAA. This is a very close issue, one on which I may be wrong, but, having undertaken this comparison, I believe there exist critical distinctions in the text and structure of the IDEA and the ADA and FHAA that persuade me that the Court's ruling in *Buckhannan* was not meant to extend to the IDEA and, accordingly, does not control the interpretation of the term "prevailing party" in the attorneys' fees provision of the IDEA.

Unlike the ADA or the FHAA, the IDEA specifically addresses settlement as a basis for the award of attorneys' fees. For example, the IDEA specifically provides for a reduction in recoverable fees when parents reject timely, reasonable settlement offers. 20 U.S.C §1415(i)(3)(D). Moreover, the IDEA provides that parents may be awarded attorneys' fees when they are the prevailing party "in any action or

proceeding brought under this section," including, under certain circumstances, "for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint." 20 U.S.C. §1415(i)(3)(D)(ii). Finally, because Congress specifically delineated certain instances when attorneys' fees are prohibited under IDEA, 20 U.S.C. §1415(i)(3)(D)(ii), but did not exclude settlement agreements from being eligible for the award of attorneys' fees, settlement agreements are presumptively eligible for such an award of attorneys' fees.

Parents are considered to be "prevailing parties" under the IDEA when they succeed on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). I find that Parents succeeded on a significant issue when they obtained an evaluation and an MDC and TD was identified as emotionally/behaviorally disordered and found eligible for services from La Grange. But, irrespective of how much Parents prevailed in the hearing or in my Court, I find that Parents obtained through settlement the balance of what they desired and TD needed. TD's placement in a self-contained behavior disordered classroom in a public school is the direct result of Parents' litigation on the issue of TD's placement and the settlement represents a significant departure from La Grange's proposal to educate TD in a regular mainstream classroom with a one-on-one aide. Parents are entitled to attorneys' fees.

The precise amount of the attorneys' fees to which Parents are entitled is dependent on the degree of overall success. *See Farrar v. Hobby*, 506 U.S. 103 (1992); *Texas State Teachers v. Garfield Indep. Sch. Dist.*, 461 U.S. 424 (1983). If a plaintiff achieves only partial or limited success, an attorneys' fee award based on the hours expended on the litigation as a whole is excessive, *see Farrar*, 506 U.S. at 114, and a reduction in attorneys' fees would be appropriate. Since Parents achieved satisfaction on the most important issue, that of placement of TD in an appropriate learning environment, and on all other issues except the issue of reimbursement for the total cost of tuition at the private school,

5

I believe a reduction in fees of twenty percent would appropriately reflect the relative proportion of success achieved.

Having decided that Parents are entitled to some attorneys' fees, I turn now to the three bases La Grange offers on which to reduce any awarded attorneys' fees: Parents' attorneys' hourly rate is unreasonable, expert witness fees should not be recoverable and fees for administrative tasks and double lawyering should not be recoverable. I find that Parents' attorneys' hourly rates are reasonable considering the IDEA's mandate that attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C). Each of Parents' attorneys[3] submitted affidavits attesting to over 15 years of experience each, much or all of which is in an education-related practice. Given the experience each has, an hourly rate of $250 is not out of line with the prevailing community rate.

Next, I turn to the issue of whether expert witness fees are recoverable. The issue of expert witness fees remains unsettled. I find persuasive *Brandon K. v. New Lenox School District*, 2001 WL 149499 (N.D. Ill., Nov. 23, 2001) (Coar, J.) which specifically rejects the holdings of *Eirschele v. Craven County Bd. of Educ.*, 7 F. Supp. 2d 655 (E.D.N.C. 1998) and *Cynthia K. v. Board of Education of Lincoln-Way High Sch. Dist.*, 1996 WL 164381 (N.D. Ill. 1996) (Castillo, J.) and finds that expert witness fees are recoverable as part of attorneys' fees and costs under the IDEA. The *Brandon K.* court referenced the House of Representative Conference Report, 2001 WL at *3, which stated that:

> The conferees intend that the term "attorneys fees as part of the costs" include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian's case in the action or proceeding, as well as traditional costs incurred in the course of litigating the case. (H.R. Conf. Rep. No. 99-687 at 5 (1986).

---

[3] Ms. Susan Einspar-Wayne is referred to as an associate by La Grange but she testifies in her affidavit that she is "of counsel." Her amount of experience is in line with that of a partner as compared to an associate, so I treat both of Parents' attorneys the same for purposes of determining an appropriate hourly rate.

6

In light of the intention of the House to make expert witness fees recoverable, and in the absence of anything persuasive to the contrary, I see no reason to treat expert fees differently for the purposes of recovery by Parents.

Finally, I turn to fees for administrative tasks performed by Parents' attorneys and the issue of both attorneys billing for tasks that they performed together. I agree with La Grange that the tasks listed in its response letter are appropriately considered administrative tasks and should not be billed at the attorneys' rate of $250. And it appears that Parents see some merit in this argument as well, since they point out that they have "already voluntarily reduced the rate for all time complained of as 'administrative tasks' to a paralegal rate of $90 per hour." If this rate of $90 per hour is the rate reflected in Parents' attorneys' fee request for the applicable 8.7 hours referred to in La Grange's letter, then no further reduction is necessary. If the 8.7 hours claimed are claimed at the rate of $250, then it must be reduced by $160 per hour for the 8.7 hours. Finally, I reject La Grange's argument that the attorneys' fee be reduced by $7,087.50 to reflect 23.35 hours where the two attorneys performed work and both were billed. In a complex litigation that stretched on for years, it is not unreasonable for two attorneys to confer on strategy and the like for 23 hours.

Accordingly, I award plaintiffs and ORDER defendants to pay attorneys' fees in the amount of 80 percent of ($137,679.75 less a deduction, if any, for administrative tasks) and costs in the amount of $6,991.73.

ENTER:

James B. Zagel
United States District Judge

DATE: OCT 0 7 2002

7